```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
TONY MARCUS,                                                 :
                                                             :
                          Petitioner,                        :
                                                             :
           -against-                                             REPORT AND RECOMMENDATION
                                                             :
SUPT. JAMES CONWAY,                                              04 Civ. 0064 (JSR)(KNF)
                                                             :
                          Respondent.                        :
                                                             :
------------------------------------------------------------ X
```

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE JED S. RAKOFF, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Tony Marcus ("Marcus"), proceeding pro se, brings this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. He contends his confinement by New York State is unlawful because: (1) the prosecutor amended the relevant indictment without resubmitting the case to the grand jury; (2) the trial court lacked authority to order the amendment of his indictment; and (3) his appellate counsel rendered ineffective assistance to him by failing either to challenge, as error, the impermissible amendment of the indictment or to raise on appeal that the indictment was defective.[1]

The respondent opposes Marcus' application for the writ. He contends: (i) the decision by the New York State Supreme Court, Appellate Division, First Department, on the petitioner's

---

[1] Marcus submitted a second amended petition to the Court. However, he never sought or received permission from the Court to amend his petition for a second time. Therefore, his second amended petition has not been analyzed by the Court.

1

ineffective assistance of appellate counsel claim was neither contrary to nor involved an unreasonable application of clearly established federal law; and (ii) the petitioner's claims concerning a defective indictment were procedurally defaulted, since they were not presented to the state court and the petitioner has failed to show either cause for his default and prejudice resulting therefrom, or that he is actually innocent.

## II. BACKGROUND AND FACTS

On the evening of October 19, 1997, Francisco Nunez ("Nunez") and Juan Carlos Hernandez ("Hernandez") were entering a livery cab, which was driven by Edward Martinez ("Martinez"), on West 145th Street and Amsterdam Avenue, in Manhattan. Suddenly, Marcus and Terry Beckett ("Beckett") pushed the two men into the cab and climbed in the back seat of the vehicle with them. When Martinez stopped the vehicle at a red traffic light, Marcus began to search Nunez's pockets while Beckett held a gun, alternately, to the heads of Hernandez and Martinez. As Martinez tried to look at Beckett's face, he told Martinez to "take it easy," and cautioned him not to look at Beckett's face.

At that time, Hernandez observed a marked police vehicle approach the traffic light. Hernandez attempted, without success, to get the attention of the police officers who were in that vehicle. However, Martinez, who also saw the police vehicle, determined, once the vehicle began to move again, to open the driver's door of the livery cab and throw himself out of the moving cab and onto the roadway. When he did so, Ingrid Gonzales ("Gonzales") and her 13-year-old daughter, Jennifer Rosario ("Rosario"), who were in a car immediately behind the marked police vehicle, noticed that, as Martinez was throwing himself out of his cab, a hand grasped his clothing from behind. The livery cab continued moving forward, until it mounted the

sidewalk and struck a tree.

Martinez ran toward the police officers' vehicle and waived his hands to capture their attention and obtain their help.  Alerted by Martinez, the police officers exited their vehicle while Marcus and Beckett leaped from the cab, brandishing guns.  The officers ordered Marcus and Beckett to stop, but the two men disregarded that directive and fled the scene.  The officers gave chase.  As they did so, the officers broadcasted the direction in which the men had fled and a very limited description of them.  During the chase, Beckett discarded his jacket, hat and Nunez's wallet.  Those items were later recovered by police personnel from under a parked van.  Beckett was apprehended and was identified shortly thereafter by Martinez, during a show-up conducted on the street.

A police officer who heard his colleagues' broadcast, traveled to the vicinity of the crime, after activating his vehicle's siren and turret lights.  When the officer reached West 144th Street, between Convent Avenue and Hamilton Terrace, he noticed that only one of the several pedestrians near his vehicle appeared oblivious to the vehicle's siren and lights.  Finding that behavior suspicious, the officer stopped that person.  That person is the petitioner.  The officer noticed sweat on the petitioner's head.  The officer asked the petitioner what he was doing in the area and received a vague response.  The officer placed a hand on the petitioner's chest and felt his heart beating faster than would normally be expected.  The officer contacted the police dispatcher to advise that he had a possible suspect.  Martinez was brought to the location where the petitioner had been stopped.  He identified the petitioner as one of the gunmen who had been in his livery cab.  Based on that show-up identification, Marcus was arrested.

On November 7, 1997, Marcus was indicted by a grand jury for: (1) robbery in the first

3

degree; (2) kidnaping in the second degree; (3) coercion in the first degree; (4) two counts of criminal possession of a weapon in the second degree; and (5) criminal possession of a weapon in the third degree.  However, a controversy emerged over the exact charges the grand jury had preferred against Marcus because the text of the indictment he received and the text of the indictment the prosecutor possessed did not jibe.  Marcus contends the indictment on which his trial was based was not the indictment the grand jury returned against him but was an accusatory instrument the prosecutor amended improperly.  Marcus was convicted, after trial, on December 7, 1998, for robbery in the first degree, coercion in the first degree and criminal possession of a weapon in the second and third degrees.  Marcus was sentenced, as a persistent violent felony offender, to concurrent terms of imprisonment of 20 years to life, 3 ½ to 7 years, 16 years to life and 12 years to life, respectively.

On direct appeal to the New York State Supreme Court, Appellate Division, First Department, Marcus claimed that: (i) his conviction was against the weight of the evidence and he was denied due process because none of the witnesses could identify him credibly as one of the robbers; and (ii) his Fourth and Fourteenth Amendment rights were violated because the police officer who stopped and detained him on the night of the robbery lacked reasonable suspicion to do so.  The Appellate Division affirmed his conviction unanimously on April 24, 2001.  The court found that: (a) credibility issues were properly presented to the jury and no reason to disturb its determinations existed; (b) Marcus' detention by a police officer, so that a show-up could be conducted, was based on reasonable suspicion; and (c) the verdict was not against the weight of the evidence.  See People v. Marcus, 282 A.D.2d 377, 723 N.Y.S.2d 368 (App. Div. 1st Dep't 2001).  On July 2, 2001, the New York Court of Appeals denied Marcus'

4

application for leave to appeal to that court. See People v. Marcus, 96 N.Y.2d 903, 730 N.Y.S.2d 801 (2001).

In October 2001, Marcus, proceeding pro se, made an application for a writ of error coram nobis to the New York State Supreme Court, Appellate Division, First Department. Marcus alleged his appellate counsel was ineffective, because he failed to raise as error to that court that Marcus had been convicted based on a defective indictment. The Appellate Division denied Marcus' application on July 11, 2002. See People v. Marcus, 296 A.D.2d 873, 746 N.Y.S.2d 621 (App. Div. 1st Dep't 2002). At the time the Appellate Division denied Marcus' coram nobis application, he was not permitted, by New York law, to seek leave to appeal to the New York Court of Appeals. See New York Criminal Procedure Law ("CPL") § 450.90 (authorizing appeal to the New York Court of Appeals from an intermediate appellate court's order granting or denying a coram nobis application effective November 1, 2002).

In October 2002, Marcus made an application to the New York State Supreme Court, New York County, pursuant to New York Criminal Procedure Law ("CPL") § 440.10, for an order vacating his judgment of conviction. He alleged that the trial court lacked subject matter jurisdiction over the robbery charge made against him because the prosecutor failed to present any evidence to the grand jury to support that charge. On November 12, 2002, the court denied Marcus' application, pursuant to CPL § 440.10(2)(c), because of his unjustifiable failure to raise the issue on direct appeal. Marcus did not seek leave to appeal from the denial of his application to the Appellate Division.

In December 2003, Marcus made another application, pursuant to CPL § 440.10, to the New York State Supreme Court, New York County, to vacate his judgment of conviction. In that

application, Marcus alleged he received ineffective assistance from his trial counsel. According to Marcus, his trial counsel erred by failing to request that the indictment be dismissed, because it was amended improperly and, further, by eliciting an in-court identification of him, while cross-examining Rosario, who had never identified him as one of the robbers prior to the trial. On January 22, 2004, the court denied the application, pursuant to CPL § 440.10(2)(c), because Marcus failed, unjustifiably, to raise these matters on his direct appeal. On May 18, 2004, the Appellate Division denied Marcus' application for leave to appeal from the trial court's denial of his second CPL § 440.10 motion. See People v. Marcus, 2004 N.Y. App. Div. LEXIS 7166 (App. Div. 1st Dep't 2004).

    In April 2004, Marcus filed a petition for a writ of habeas corpus alleging that: (1) the jury's verdict was against the weight of the evidence; (2) the police lacked probable cause to seize and search him; and (3) the indictment filed against him was amended illegally and was defective. By order of the court, Mukasey, C. J., dated January 6, 2004, Marcus' Fourth Amendment claim was dismissed, and he was directed to amend his petition to "specify the grounds on which he is being unconstitutionally imprisoned," other than the Fourth Amendment ground, and to provide "a summary of the facts supporting each of the grounds [under which he was seeking] relief." Marcus was advised that the amended petition would replace completely, not supplement, the initial petition.

    On March 10, 2004, while his second CPL § 440.10 application was pending in the state court, Marcus filed an amended petition for a writ of habeas corpus contending that: (1) the prosecutor amended the indictment without resubmitting evidence to the grand jury; (2) the trial court lacked authority to order that the indictment be amended to add a new count, even in a

circumstance where the grand jury voted in favor of the charge recited in the new count, but that charge was omitted from the indictment as a result of a clerical error; and (3) his appellate counsel rendered ineffective assistance to him by failing to present a defective-indictment claim to the Appellate Division. By order, dated April 23, 2004, the Court stayed the petition to allow Marcus to exhaust his state court remedies with respect to his ineffective assistance of appellate counsel claim. Marcus later advised the Court that the state court proceedings had been concluded. After considering the amended petition, the Court directed the respondent to serve and file an answer and provided Marcus the opportunity to submit a reply.

### III. DISCUSSION

*Defective Indictment*

The petitioner asserts his indictment was defective because: (i) it was amended to include a robbery charge, which charge was not submitted to the grand jury for its consideration; and (2) the trial court lacked authority to order that the indictment be amended as discussed above. He contends the conduct of the prosecutor and the trial court violated his constitutional rights.

"Although the Due Process Clause [of the Fourteenth Amendment] guarantees petitioner a fair trial, it does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury." Alexander v. Louisiana, 405 U.S. 625, 633, 92 S. Ct. 1221, 1226-27 (1972); see Fields v. Soloff, 920 F.2d 1114, 1118 (2d Cir. 1990). The petitioner's claim, that he had a constitutional right to be tried for robbery based on a grand jury indictment free of defect, does not provide a basis for habeas review because the claim does not present a federal question, as required by 28 U.S.C. 2254(a).

Generally, "habeas corpus is not available to test the sufficiency of the indictment."

7

United States ex rel Mintzer v. Dros, 403 F.2d 42, 43 (1967).  "An indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events."  United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992).  Moreover, the Supreme Court has found that "defects in an indictment do not deprive a court of its power to adjudicate a case."  United States v. Cotton, 535 U.S. 625, 630, 122 S. Ct. 1781, 1785 (2002).

Marcus' assertion, that the trial court lacked subject matter jurisdiction over the robbery charge, because the indictment was defective, is undermined by Cotton, supra.  Moreover, to the extent Marcus is challenging the sufficiency of the indictment, that claim is unexhausted.  However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  The record demonstrates that on February 23, 1998, more than seven months before his trial, the petitioner received, and the trial court had before it, a copy of the indictment which was stamped, "Filed;" that indictment included a robbery charge.  The indictment appraised the petitioner, sufficiently, of the robbery charge made against him.  Therefore, the Court finds, that, in the circumstance of the instant case, any challenge by Marcus to the sufficiency of his indictment is unavailing, and he is not entitled to habeas corpus relief based on his defective-indictment claim.

*Ineffective Assistance of Appellate Counsel*

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus where a state court has adjudicated the merits of a claim raised in a federal habeas corpus petition only if the state court's adjudication resulted in a

decision that: (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  See 28 U.S.C. § 2254(d).  The Supreme Court has interpreted "the contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1) as having independent meaning. Williams v. Taylor, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 1519 (2000).  A state court decision is "contrary to" the Supreme Court's precedent: (a) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law;" or (b) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Supreme Court.  Id. at 405, 120 S. Ct. at 1519. A decision is an "unreasonable application" of clearly established federal law, as determined by the Supreme Court, if: (i) "the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;" or (ii) "the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407, 120 S. Ct. at 1520.

If a state prisoner's federal claim was adjudicated on the merits, a federal court must presume any determination of a factual issue made by a state court to be correct and a habeas corpus petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).  A federal claim is adjudicated on the merits when the state court: "(1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).  To determine whether a state

9

court's disposition is on the merits, a federal court considers: "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." Id. at 314 (citing Mercadel v. Cain, 179 F.3d 271, 274 [5th Cir. 1999]).

The petitioner's ineffective assistance of appellate counsel claim, presented in state court through an application for a writ of error coram nobis, was adjudicated on the merits. This is clear because the Appellate Division indicated that, "upon reading and filing the papers with respect to the motion, and due deliberation having been had thereon" and, further, by relying on and making citation to People v. De La Hoz, 131 A.D.2d 154, 158, 520 N.Y.S.2d 386, 388 (App. Div. 1st Dep't 1987), it determined to deny the petitioner's application for a writ of error coram nobis.

The petitioner asserts the state court's decision is contrary to the Supreme Court's precedent because the Appellate Division failed to address the issue of ineffective assistance of the appellate counsel, or to "identify the governing legal rule or apply it to the petitioner's claim[]." Moreover, he asserts, the state court's decision represents an unreasonable application of clearly established federal law because it was "based on an unreasonable determination of facts in light of the evidence in state court proceedings."

The petitioner's assertions, that the state court's decision is contrary to Supreme Court precedent because the state court failed to address his claim or apply the correct legal standard governing his claim, are baseless. The Appellate Division addressed the petitioner's claim when it decided, after due deliberation and review of the relevant submissions, that Marcus was not

entitled to the relief he sought. Furthermore, the Appellate Division applied the proper legal standard set forth in Strickland v. Washington, 467 U.S. 1267, 104 S. Ct. 3562 (1984), when it denied Marcus' application, because the court made citation to De La Hoz, a case in which the court relied on Strickland. In addition, the petitioner's conclusory statement, that the state court's decision is based on an unreasonable determination of the facts in light of the evidence presented at the state court proceedings, does nothing more than quote the applicable statutory language. Without more, that is not sufficient to satisfy the burden placed on Marcus by 28 U.S.C. § 2254(d). The petitioner has not identified how the Appellate Division's determination, on his ineffective assistance of appellate counsel claim, was contrary to or involved an unreasonable application of clearly established Federal law, other than his erroneous claim that the court did not address the issue raised in his coram nobis petition. Furthermore, he has not demonstrated how the Appellate Division's decision was grounded on an unreasonable determination of the facts in light of the evidence presented in the record before it. Consequently, the Court finds that the petitioner is not entitled to habeas corpus relief based on his claim that he received ineffective assistance from his appellate counsel.

## IV. RECOMMENDATION

For the reasons set forth above, I recommend that the petitioner's application for a writ of habeas corpus be denied.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the

Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, 500 Pearl Street, Room 1340, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Rakoff, and to the chambers of the undersigned, 40 Centre Street, Room 540, New York, New York, 10007. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140, 470 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F. 3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 58-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
April 30, 2007

Respectfully submitted,

_____
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Mailed copies to:

Tony Marcus
Kimberly Morgan